S12Y0401, S12Y0402. IN THE MATTER OF JOAN PALMER DAVIS (two cases).
(725 SE2d 216)

PER CURIAM.

These disciplinary matters are before the Court pursuant to the Report and Recommendation of the Review Panel which adopts the findings and conclusions of the special master, Catherine Koura, and recommends that Respondent Joan Palmer Davis (State Bar No. 210810) be disbarred. Although Davis has filed exceptions to the Report and Recommendation, we agree with the Review Panel.

These cases started as two separate disciplinary proceedings which were consolidated below. The main disciplinary matter arose from Davis' representation of a client in a child support enforcement action. The client sought to terminate his obligation to pay child support based on a DNA test showing that he was not the father of the child. He paid Davis, who has been a member of the Bar since 1990, $1,200 (toward a quoted fee of $1,500) but later filed a grievance asserting that Davis failed to appear on December 3, 2008 for a scheduled hearing in the Cobb County Superior Court and effectively withdrew from the case without advising him or otherwise communicating with him. Davis' answers to the grievance and the resulting Notice of Investigation were untimely, but in them she insisted that she had appeared for the December 3 hearing.

Subsequently, a Formal Complaint issued asserting that Davis failed to communicate properly with the client regarding his case, failed to appear at the hearing, failed to effectively withdraw from the representation, and made false statements in her response to the Notice of Investigation. Ultimately, the State Bar charged Davis with violating Rules 1.3, 1.4, 1.16, 8.1, 8.4 (a) (4), and 9.3 of the Georgia Rules of Professional Conduct, see Bar Rule 4-102 (d). The maximum punishment for a single violation of Rules 1.3, 8.1 or 8.4 (a) (4) is disbarment, while a single violation of the other Rules is a public reprimand. The State Bar also invoked Bar Rule 4-103 noting that Davis received Investigative Panel Reprimands in unrelated cases on February 16, 2007 and April 16, 2010 (both based on conduct similar to that exhibited in this case). See Bar Rule 4-208. Davis was personally served with the Formal Complaint in the main case on

June 30, 2010.

In the second matter, the State Bar asserted that Davis again violated Rule 9.3 by failing to timely respond to a properly-served Notice of Investigation arising out of a grievance filed by a different client. See Bar Rule 4-204.3 (a). The State Bar again invoked Bar Rule 4-103 and sought "appropriate discipline." Davis was personally served with the Formal Complaint in that matter on June 22, 2010.

The special master granted the State Bar's motion for default as to the second matter, but not as to the main matter. Lengthy evidentiary hearings were held, after which the special master issued her consolidated Report and Recommendation, making extensive factual findings; concluding that Davis had violated the Bar Rules as alleged; and holding that disbarment was the only appropriate punishment given Davis' actions, the absence of any mitigating circumstances and the existence of numerous aggravating factors including the existence of a prior disciplinary history; the fact that multiple offenses were proven; Davis' failure to comply with disciplinary procedural rules; Davis' submission of false statements or evidence; her refusal to acknowledge the wrongful nature of her conduct; and her substantial experience in the practice of law. Davis sought a "new trial" before the special master and filed objections to her report, but the special master denied the motion for new trial and the Review Panel rejected Davis' objections, and instead, adopted the findings and conclusions set out in the special master's report.

Davis then filed exceptions to the Review Panel's Report and Recommendation in this Court, primarily addressing the main disciplinary matter. Davis argues that the facts do not support the conclusion that she violated any Bar Rules in that case, but her recitation of the facts is not complete. The complete facts as adopted by the Review Panel show that the client approached Davis armed with a DNA test proving he was not the child's father, but facing a motion filed by the Department of Human Resources ("DHR") to hold him in contempt for his failure to pay $14,733 in child support (plus $12,038 in interest), he wished to get assistance in terminating his obligation for child support. Although Davis filed no defensive pleadings on the client's behalf in the contempt case, she twice appeared at hearings in the case. In both instances, the hearings were continued due to the absence of one party or the other. At the second hearing, the continued hearing date was mistakenly set for a Monday (December 1, 2008), rather than a Wednesday (which were customarily set aside for hearing child support matters). Opposing counsel quickly discovered the mistake and alerted both the court and Davis' secretary. In September 2008, an official notice went out

showing the hearing set for December 3. In November, Davis filed a motion to withdraw from representing the client, but the court never ruled on it. Davis did not advise the client of the changed hearing date and, in fact, told him to be in court at 9:00 a.m. on December 1. After the client and his wife stopped by Davis' office on the morning of December 1 to make a payment on Davis' fees, they walked to court. Although Davis told them at her office that she would see them shortly in court, she did not show up. When the client and his wife realized that something was amiss (because the courtroom was empty), they sought assistance of courtroom personnel (who directed them to another courtroom) and unsuccessfully attempted to contact Davis, who did not respond. When the client finally discovered from the clerk's office that his hearing date was set for December 3, he got a copy of the new notice and left it with the secretary at Davis' office. Davis testified that she did go to the courthouse on December 1; that upon discovering the courtroom empty, she went directly to the clerk's office where she learned that the hearing was actually set for December 3; and that she then left the courthouse never having seen her client. It is undisputed that she did not contact her client until late in the afternoon at which point she told him there had been a mistake and that the hearing was set for 9:00 a.m. on December 3, 2008. On the morning of December 3, her client and his wife again spoke to Davis at her office where she told them that she would meet them in court. Although Davis never showed up, the client and his wife, opposing counsel and a representative of the DHR were present in court beginning at 9:00 a.m. Davis did not show up and did not answer repeated phone calls from her client or his wife. At some point during the day, opposing counsel made the decision to voluntarily dismiss the contempt case without prejudice based on "noncooperation of the custodial parent," who had not shown up for court. When informed of this development, the client initially refused to sign the dismissal until Davis got there, but around 2:00 p.m. when Davis had still not shown up, he finally signed it and left the courthouse. The dismissal of the contempt action did not formally end his legal responsibility for child support, nor did it establish that the client was not the child's father. Opposing counsel and the DHR representative remained in the courthouse on other matters until 5:00 p.m., but never saw Davis. After the hearing, the client repeatedly attempted to contact Davis, but she did not respond until he sent her a letter in July 2009 requesting a refund of his fee because she had not shown up at the hearing. Davis did not refund any portion of the fee but in her response letter she asserted that she had appeared in court on December 3 and that the client had not been there. Davis similarly asserted in her untimely responses to disciplinary authorities that she was present in court on both

December 1 and December 3. This Court is bound by the Review Panel's findings of fact when there is any evidence to support them, see *In the Matter of Ellison*, 280 Ga. 303 (627 SE2d 25) (2006); *In the Matter of Morse*, 265 Ga. 353 (456 SE2d 52) (1995) and, in this case, there is ample support for them in the testimony of opposing counsel, the DHR representative and Davis' client and his wife. As to the allegations in the second disciplinary matter, Davis admits that she did not file a timely sworn response to the Notice of Investigation in that case.

In her exceptions to the Review Panel's Report and Recommendation, Davis also contends, as she did before the Review Panel, that she was denied due process because the court reporter did not forward the transcripts of the hearings to her in time for her to use them to argue her case, but as noted by the State Bar, Davis was aware of the procedure for obtaining the transcripts and failed to promptly do so and more importantly, she has had the transcripts for a significant period of time and has not cited to any evidence she contends was overlooked nor has she otherwise established how she was prejudiced by her failure to obtain the transcripts earlier.

Davis next contends, as she did before the Review Panel, that documents she submitted after the special master issued her report and recommendation show that opposing counsel's testimony was incorrect in one respect. But the documents do nothing to cast doubt on opposing counsel's clear testimony that Davis was not in court on the day of the scheduled hearing. And opposing counsel's testimony in that regard is supported by the testimony of three other witnesses.

In several separately-enumerated exceptions, Davis argues that disbarment is not the appropriate discipline in these cases because unlike the cases relied upon by the State Bar, there is no proof that she intentionally misrepresented facts in the main case (as opposed to being mistaken about those facts) or that she caused any harm to her client. In this latter regard, she contends that her client was not harmed by her actions since the contempt case was dismissed and her client thus avoided being held responsible for the child support arrearages. She also argues that her representation of the client ceased upon dismissal of the case and therefore she violated no rule by failing to communicate with him after that time. As the State Bar notes in its response, ample evidence exists to support the conclusion that Davis made false statements in her Response to the Notice of Investigation and in her own testimony before the special master. This Court has little tolerance for attorneys who make false statements during disciplinary proceedings. *In the Matter of O'Brien-Carriman*, 288 Ga. 239, 240 (702 SE2d 635) (2010); *In the Matter of Shehane*, 276 Ga. 168 (575 SE2d 503) (2003); *In the Matter of Friedman*, 270 Ga. 5 (505 SE2d 727) (1998). False statements by an

attorney cause harm to the profession and the public. Moreover, Davis' client was harmed because he hired Davis to present his DNA evidence and to have his obligation for child support terminated, but she did not file any pleading toward that end on his behalf and those issues were left unresolved by the dismissal of the contempt case. Further, after the dismissal, Davis failed to discuss with her client options for having him freed from further child support collection efforts, to otherwise protect his interests, or to refund any unearned fees. Thus, this Court agrees with the Review Panel's conclusions that Davis breached the disciplinary rules as alleged.

Finally, Davis argues that the State Bar's efforts to use Bar Rule 4-103 to disbar her based on the existence of earlier discipline should not be condoned where the Bar failed to prove its current cases. In this regard, Davis relies on the weaknesses she perceives in the main case and on the fact that the State Bar abandoned the underlying grievance filed by the client in the second matter, choosing to pursue only her failure to file a timely response to the Notice of Investigation therein. As the State Bar notes, however, this objection was not raised below and cannot be raised for the first time before this Court. Moreover, given the facts of these cases, Davis' disciplinary history, the aggravating factors noted above, and the absence of any factors in mitigation, this Court agrees that disbarment is the appropriate punishment for Davis' violation of Rules 1.3, 1.4, 1.16, 8.1, 8.4 (a) (4), and 9.3. Accordingly, the name of Joan Palmer Davis hereby is removed from the rolls of persons entitled to practice law in the State of Georgia. Davis is reminded of her duties under Bar Rule 4-219 (c).

*Disbarred. All the Justices concur, except Benham, J., not participating.*

DECIDED FEBRUARY 27, 2012 —
RECONSIDERATION DENIED APRIL 11, 2012.

*Paula J. Frederick, General Counsel State Bar, Jonathan W. Hewett, Assistant General Counsel State Bar*, for State Bar of Georgia.

*Gene Chapman*, for Davis.