S11Y0423, S11Y0424. IN THE MATTER OF WILLIAM M. PETERSON (two cases).

(725 SE2d 252)

PER CURIAM.

These disciplinary matters are before the Court on the report and recommendation of a special master appointed by this Court on two disciplinary matters filed against Respondent William M. Peterson, a member of the State Bar of Georgia since 1988.[1] The special master found that Peterson had violated Rules 1.16 (d)[2] and 8.1 (a)[3] of Rule 4-102 (d) of the Georgia Rules of Professional Conduct in connection with his representation of one client (Case No. S11Y0423), and Rules 1.3, 1.4,[4] and 8.1 (a) in connection with his representation of a second client that is the subject of Case No. S11Y0424. Taking into account respondent's disabilities and letters of support from knowledgeable attorneys in the area, the special master recommended that Peterson be suspended from the practice of law for twelve months.

Following the filing of formal complaints by the Office of General Counsel of the State Bar of Georgia, the special master granted

---

[1] State Bar No. 574660.

[2] Rule 1.16 (d) provides that, upon termination of representation, a lawyer shall take steps to protect a client's interest, such as surrendering papers to which the client is entitled.

[3] Rule 8.1 (a) states that a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter.

[4] Rule 1.3 requires a lawyer to act with reasonable diligence and promptness in representing a client, and Rule 1.4 requires a lawyer to keep a client reasonably informed about the status of matters and shall promptly comply with reasonable requests for information.

summary judgment to the State Bar based on the unconditional admissions of conduct made by Peterson in his petition for imposition of voluntary discipline.[5] The record in Case No. S11Y0423 shows that Peterson represented a client in a criminal matter at the trial level and ceased his representation after the client entered a guilty plea. Peterson told the client he would send the entire case file to the client so the client could pursue post-conviction remedies. Despite the client's requests, Peterson did not send the file and, after the client filed a grievance with the State Bar, Peterson falsely told the Investigative Panel that he had sent the file to the client. Peterson surrendered the file to the client after the Investigative Panel notified him that it was directing the State Bar's Office of General Counsel to file a Formal Complaint against Peterson.

The record in Case No. S11Y0424 shows that Peterson was appointed to serve as appellate counsel to a recently-convicted man and failed to communicate with the client or to respond to the client's numerous letters requesting information about the status of the appeal and Peterson's efforts on his behalf. After the client filed a grievance with the Office of General Counsel, Peterson falsely told the Office of General Counsel that he had requested a transcript of the client's trial so he could take action on the appeal. It was not until Peterson was informed that a Formal Complaint was being filed that he ordered the transcript and pledged to work on the client's appeal.

Based on the facts set forth above, we agree with the special master's findings that Peterson violated Rules 1.16 (d) and 8.1 (a) in Case No. S11Y0423 and Rules 1.3, 1.4 and 8.1 (a) in Case No. S11Y0424. The special master held a hearing, at which respondent did not appear, on the appropriate level of discipline to be imposed. Letters of support from knowledgeable attorneys practicing in the same geographical area as Peterson were presented to the special master, with one attorney noting in his letter that Peterson's violations occurred at a time "when his law practice was dissolving and he was experiencing medical issues that required hospitalization over an extended period of time." A senior district attorney in the judicial circuit wrote that Peterson "has the respect, trust, and admiration of every Judge in our circuit, as well as the attorneys who practice in this courthouse. His word is his bond. His handshake means more than a signature on a dotted line." Citing the letters and Peterson's physical impairment, the special master recommends that

---

[5] Peterson filed petitions for imposition of voluntary discipline in which he made admissions concerning his conduct and sought imposition of a reprimand by the Review Panel as discipline for his actions. In an order issued on November 3, 2008, this Court rejected the petitions as inadequate. See *In the Matter of Peterson*, S08Y1241, S08Y1583.

Peterson be suspended from the practice of law in Georgia for twelve months. While a single violation of Rule 1.3 or 8.1 (a) is punishable with disbarment and the record shows that Peterson has a prior disciplinary history,[6] physical disability or impairment is viewed by this Court as a mitigating factor in imposing discipline. See *In the Matter of Shelfer*, 278 Ga. 55 (597 SE2d 365) (2004); *In the Matter of deRosay*, 268 Ga. 868 (494 SE2d 339) (1998); *In the Matter of Wittes*, 267 Ga. 52 (472 SE2d 429) (1996). Taking that into consideration, we order that Peterson be suspended from the practice of law in Georgia for three years and condition his return to the practice of law on certification from a physician or the Lawyer's Assistance Program that his physical impairment no longer impedes his ability to practice law. Peterson is reminded of his duties under Bar Rule 4-219 (c).

*Three-year suspension. All the Justices concur, except Hunstein, C. J., and Melton and Nahmias, JJ., who dissent.*

NAHMIAS, Justice, dissenting.

The Special Master recommended that a one-year suspension is the appropriate discipline in these cases. Although the majority opinion tracks the reasoning of the Special Master, it concludes that the suspension should instead be for three years. Based on the evidence in the record and consistent with our precedent, I believe that William M. Peterson should be disbarred, and so I dissent.

In addition to abandoning two clients, Peterson made false statements to both the Investigative Panel and the Office of General Counsel of the State Bar during the disciplinary process. We unanimously reiterated just last month that "[t]his Court has little tolerance for attorneys who make false statements during disciplinary proceedings. . . . False statements by an attorney cause harm to the profession and the public." *In the Matter of Davis*, 290 Ga. 857, 860-861 (725 SE2d 216) (2012) (disbarring Davis and citing two other cases in which lawyers who made such false statements were disbarred). See also *In the Matter of O'Brien-Carriman*, 288 Ga. 239, 240 (702 SE2d 635) (2010) (explaining that "[m]aking false statements to the Bar during the disciplinary process is a very serious matter which typically results in, at least, a significant suspension from the practice of law"). In my view, the Special Master did not give sufficient weight to Peterson's multiple acts of intentional and deceitful misconduct, which are not mentioned in the Special Master's brief discussion of the appropriate discipline. And despite our usual emphasis on this serious aggravating factor, the majority opinion does not even mention Peterson's false statements in dis-

---

[6] Peterson received two formal letters of admonition in April 1996 and May 2010.

cussing the proper disciplinary sanction. To the contrary, the majority cites a single supporting letter which says that Peterson's "word is his bond" — an attribute contradicted by his admitted lies during these disciplinary proceedings.

Similarly, while the Special Master's factual findings note Peterson's prior disciplinary history — two formal letters of admonition, including one issued in May 2010 — that history was given no apparent weight as an aggravating factor. See Bar Rule 4-103 ("A finding of a third or subsequent disciplinary infraction under these Rules shall, in and of itself, constitute discretionary grounds for suspension or disbarment."). The majority opinion relegates this aggravating factor to a footnote.

Furthermore, based on the limited record before this Court, I would not give substantial weight to the two mitigating factors relied on by the Special Master and the majority — that Peterson "suffers from substantial physical disabilities and has furnished letters of support from knowledgeable attorneys practicing in his area." See Bar Rule 4-217 (c) ("Any review undertaken by the Supreme Court shall be solely on the original record."). As for the "substantial physical disabilities," the only "evidence" in the record is the Special Master's statement at the disciplinary hearing that, while calling around to find out if Peterson planned to attend the hearing (at which he did not appear), a secretary at another attorney's office "stated that [Peterson] was frequently in and out of the hospital, for whatever that matters here," and the statement in one of the supporting letters that, "as I understand it, [the complaints against Peterson] occurred sometime during the summer months of 2006, a time when his law practice was dissolving and he was experiencing medical issues that required hospitalization over an extended period of time."

The majority opinion relies heavily on Peterson's "physical impairment," and even imposes a condition on his reinstatement on that ground, but this Court has not a clue as to what Peterson's physical condition actually is, or was in the past, or how it affected his ability to practice law as the rules of professional conduct require. Notably, Peterson's prior petition for voluntary discipline did not mention any physical disability as a mitigating factor, nor did the author of his second supporting letter. Moreover, even if he was hospitalized in the summer of 2006, that would not justify his false statement to the Bar's Office of General Counsel, which occurred over a year later. As for the supporting letters, they merit some weight in mitigation, but they both emphasize that Peterson's word

"is his bond," which, to repeat, is a point undermined by his admission that his words to the Bar during both of these disciplinary proceedings were in fact false.

The full Court agrees that the one-year suspension recommended by the Special Master is insufficient discipline. The three-year suspension that the majority imposes is more substantial, but I believe, based on the record and our precedent, that Peterson should be disbarred. See, e.g., *In the Matter of Kimbrough*, 286 Ga. 30 (685 SE2d 713) (2009); *In the Matter of Eaton*, 286 Ga. 28 (685 SE2d 279) (2009); *In the Matter of Henry*, 285 Ga. 871 (684 SE2d 624) (2009).

I am authorized to state that Chief Justice Hunstein and Justice Melton join in this dissent.

DECIDED MARCH 19, 2012.

*Paula J. Frederick, General Counsel State Bar, Jonathan W. Hewett, Assistant General Counsel State Bar*, for State Bar of Georgia.